Hart L. Robinovitch (AZ SBN 020910)
**ZIMMERMAN REED LLP**
14646 N Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (480) 348-6400
Facsimile: (480) 348-6415
Email: hart.robinovitch@zimmreed.com

Mark J. Geragos (*pro hac vice* to be filed)
Ben J. Meiselas  (*pro hac vice* to be filed)
**GERAGOS & GERAGOS, P.C.**
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone: (213) 625-3900
Facsimile: (213) 625-1600
Email: Geragos@Geragos.com

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Luke Roger Allison, individually and as representative of a class of similarly situated persons, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| -v- | |
| CenturyLink, Inc., a Louisiana corporation; CenturyLink Communications, LLC, a Delaware limited liability company doing business in Arizona as CenturyLink Communications, LLC; CenturyLink Public Communications, Inc., a Florida corporation doing business in Arizona as CenturyLink Public Communications, Inc.; CenturyLink Sales Solutions, Inc., a Delaware corporation doing business in Arizona as CenturyLink Sales Solutions, Inc.; and Does 1-50, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Luke Roger Allison, individually and as the representative of a class of similarly situated persons, through the undersigned counsel, alleges as follows:

## NATURE OF ACTION

1.     This Class Action is brought to obtain declaratory, injunctive, equitable and monetary relief as a result of Defendants CenturyLink, Inc., CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., and CenturyLink Sales Solutions, Inc.'s (hereinafter collectively referred to as "Defendants" or "CenturyLink") misleading and deceptive conduct adding false and unauthorized charges to customer's telephone, internet, and/or telephone accounts.   As outlined further below, Defendants' conduct violated applicable consumer protection statutes, breached customer contracts, and/or resulted in Defendants being unjustly enriched at the expense of their customers.   The relief sought, including an accounting by Defendants and the payment of refunds for all overcharges, is necessary and appropriate.

## PARTIES

2.     Plaintiff Luke Roger Allison ("Allison" or "Plaintiff") is a citizen of the State of Arizona who resides in Phoenix, Arizona. Plaintiff is a qualified and appropriate representative of a group of customers of Defendants who are similarly situated and have suffered harm in the same manner as Plaintiff as a result of the actions and/or omissions of the Defendants described within.

3.     CenturyLink, Inc. is a Louisiana corporation doing business in the state of Arizona as CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., and CenturyLink Sales Solutions, Inc., which are registered to do business in the State of Arizona. Upon information and belief, CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., and CenturyLink Sales Solutions, Inc. are direct and/or indirect subsidiaries of CenturyLink, Inc.  All profits of CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., and CenturyLink Sales Solutions, Inc., including those obtained from the practices complained of herein,

are eventually up-streamed to CenturyLink, Inc., and reported on its financial statements.

4.     As described on its website, "CenturyLink (NYSE: CTL) is a global communications and IT services company focused on connecting its customers to the power of the digital world. CenturyLink offers network and data systems management, big data analytics, managed security services, hosting, cloud, and IT consulting services. The company provides broadband, voice, video, advanced data and managed network services over a robust 265,000-route-mile U.S. fiber network and a 360,000-route-mile international transport network." *Available at:* http://ir.centurylink.com/CorporateProfile.aspx?iid=4057179.

5.     At all material times CenturyLink, Inc. and its subsidiaries have maintained legal authority to transact business in this State, and have maintained operations throughout the State of Arizona, including in Maricopa County. CenturyLink is a large corporate provider of phone and data transmission services, including telephone, high-speed internet, and television services to residential and commercial consumers throughout the United States, including Arizona.

6.     As a result of the challenged practices, Defendants generated substantial sales of its services and merchandise within the State of Arizona during the relevant Class Period, resulting in the collection of significant fee revenue from Plaintiff and the members of the Class.

7.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as DOES are legally responsible in some manner for the events and happenings referred to herein and caused injury and damage proximately thereby to Plaintiff as hereinafter alleged. Plaintiff will seek leave of court to amend this Complaint to reflect

the true names and capacities of the Defendants designated hereinafter as DOES when the same have been fully ascertained.

8.      Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, each of the Defendants was the agent, servant, employee, co-venturer, and co-conspirator of each of the remaining Defendants, and was at all times herein mentioned acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of and for such agency, employment, joint venture and conspiracy.

9.      Plaintiff is further informed and believes, and based thereon allege, that at all relevant times, each Defendant was completely dominated and controlled by its Co-Defendants, and each was the alter ego of the other. Whenever and wherever reference is made in this Complaint to any conduct by Defendant or Defendants, such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually, jointly, and severally. Whenever and wherever reference is made to individuals who are not named as Defendants in this Complaint, but were employees and/or agents of Defendants, such individuals at all relevant times acted on behalf of Defendants named in this Complaint within the scope of their respective employments.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this action under the *Class Action Fairness Act*, 28 U.S.C. § 1332(d), because this is a class action in which: (1) there are more than a one hundred and fifty (150) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate.

11.     In addition, this Court has supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's and Class Members' claims occurred in the District of Arizona as Defendants: (a) are authorized to conduct business in this District and have intentionally availed themselves to the laws within this District; (b) currently conduct substantial business in this District; and (c) are subject to personal jurisdiction in this District. CenturyLink conducts substantial business in the State of Arizona, with offices in Phoenix and elsewhere. Defendants conducted business with Plaintiff, over the course of serval years, and overcharged him in the deceptive and misleading manner described in this District. Arizona has an overriding interest in protecting consumers and in prohibiting corporations from carrying out fraud in Arizona and through interstate commerce.

## **BACKGROUND FACTS**

13.     On June 14, 2017, former CenturyLink employee Heidi Heiser filed a whistleblower complaint in the Superior Court of Arizona for Maricopa County alleging that she was terminated for reporting to her supervisors and the CEO unlawful billing practices she observed and refused to take part in as a sales representative. *Heiser v. CenturyLink, Inc.*, No. CV2017-008928 (Maricopa Cty. Super. Ct.). Attached hereto as Exhibit A is a true and correct copy of Ms. Heiser's whistleblower complaint (hereinafter "*Heiser*" or "*Heiser* complaint" and incorporated by reference herein).

14.     As explained in the *Heiser* complaint, Defendants maintained an incentive program(s) for their employees and agents which provided financial incentives to charge customers for services they did not order and/or to overcharge customers for services they did order.   Rather than uphold its duty to act in good faith and to ensure that it carefully charged consumers only in the correct amounts, and for services that consumers authorized, Defendants shifted that burden to consumers and essentially dared them to locate the overcharges and then demand refunds.

15.     Fee generation is at the heart of Defendants' business model.  At all relevant times, Defendants sought to maximize the number of services which they could

bill customers in the Class for. Defendants had a financial incentive to employ and continue such incentive programs, as it increased their revenues and profits. At the same time, Defendants' employment of such incentive programs harmed and injured consumers financially as they paid the charges that were improperly imposed in order to keep their accounts current.

16.     Ms. Heiser's allegations of what she observed, and what the CenturyLink corporate culture encouraged, are consistent with the experiences of thousands of consumers who have been misled by CenturyLink.

17.     A digital revolt against CenturyLink's fraud has been fomented by subscribers on social media and consumer watchdog websites.

18.     By way of example, the following consumer complaints are emblematic of CenturyLink's practices, as described in the *Heiser* complaint:





19.    These types of communications reporting overcharges and blaming consumers as opposed to CenturyLink taking responsibility for its billing practices and conduct, are similar to those posted online by other victims of Defendants' practices, demonstrating a pattern and practice of Defendants' violation of applicable consumer protection statutes, breach of customer contracts, and unjust enrichment at the expense of its customers.

20.    Rather than take care to ensure that they only billed consumers for amounts actually authorized and agreed to, as Defendants had a duty to do, Defendants attempt to shift the burden to the consumers to locate overcharges and then demand refunds within a short time frame. The amounts billed to each consumer each month are relatively small (less than $200) and therefore, Defendants know that certain consumers will have little time to actively monitor and immediately seek corrections when appropriate. Defendants attempt to take advantage and exploit this. This type of catch-us-if-you-can policy was unfair, deceptive and misleading. By way of example, an outraged subscriber posted the following communication on social media:

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ /





21.    Subscribers also post their written communications complaining of CenturyLink creating and billing for duplicate accounts. Upon complaining, CenturyLink blamed the subscriber or implied that the subscriber was somehow under "fraud review."  For example, one subscriber posted  the  following communication regarding CenturyLink's duplicative billing:

/ / /

/ / /

/ / /

/ / /

/ /

7

22.     These screenshots are not outliers. Attached hereto as Exhibit B is small sample of the thousands of pages of consumer complaints, primarily focused on fraudulent billing practices, lodged on Consumer Affairs' website. Many consumers state that the only reason they rated CenturyLink with "one star" was that "zero stars" is not an option. *See,* *e.g.,* https://www.consumeraffairs.com/cell_phones/centurylink.html.

23.     Additionally, Attached hereto as Exhibit C is a true and correct copy of a Reddit thread responding to recent reporting of Ms. Heiser's complaint from consumers and other former employees and technicians describing the conduct alleged herein. *See, e.g.,*

https://www.reddit.com/r/news/comments/6hon4l/centurylink_is_accused_of_running_wells_fargolike/?st=J41YD4QQ&sh=5a66cd7a.

24.    Further, searching Twitter and Facebook with the word "CenturyLink" and any number of additional keywords—"scam," "fraud," "ripoff," and "bill"—provides significant levels of discord, desperation, and demands from victims to remedy CenturyLink's unlawful practices. A Google search of "CenturyLink Complaints," provides similar results.

25.    Upon information and belief, at least one State's Attorney General has investigated and entered into an "assurance of discontinuance" with CenturyLink which prohibits the conduct described herein, however the conduct remains ongoing.

26.    The foregoing demonstrates that Defendants have been engaged in far more than the odd mistake or rare miscommunication. Rather, it demonstrates that Defendants acted intentionally to create a new profit center at the expense of unsuspecting consumers who had placed their trust in Defendants to bill them accurately, honestly, and only withdraw from their bank accounts (many which were set up for electronic autopay deductions) the amounts actually due and agreed to.

27.    The offending and unlawful conduct by CenturyLink, throughout the United States including Arizona, includes, but is not limited to:

- Billing consumers for phone lines or service items never requested by consumers;

- Billing consumers higher rates than the rates quoted during the sales calls;

- Billing consumers early termination fees when they cancelled the services due to higher rates;

- Billing consumers when they cancelled their service upon learning the quality was not as represented;

- Billing consumers for periods of service before the service was connected, for products never received, and failing to credit consumers for these erroneous charges;

- Billing consumers for services and products that the consumer never requested without giving the consumer a credit for these charges;

- Failing to process consumers' service cancellation requests in a timely manner and billing them for the period of the time the service remained connected following the request for cancellation, without providing a credit for this time period; and

- Charging consumers full price for leased modems that consumers returned to CenturyLink within the required timeframe, and then referring the consumers account to collections when the consumer refused to pay for the returned modem.

28.    The types of practices described above affected Plaintiff and members of the Class of other CenturyLink subscribers in Arizona.

29.    Plaintiff Luke Roger Allison was a prior small business owner who now is a pest inspector living in Phoenix, Arizona.

30.    Mr. Allison is dependent on the internet for responding to calls as a pest inspector. Mr. Allison was previously a subscriber of Qwest for internet services and landline which eventually became CenturyLink.

31.    At relevant times, Mr. Allison has been a customer and subscriber of CenturyLink, contracting for telephone and/or internet services.

32.    On or around January 2011, Mr. Allison moved into the apartment where he currently resides in Phoenix, Arizona, and transferred his existing CenturyLink account to the new address. Mr. Allison had CenturyLink landline and internet services through approximately 2013. Since 2013 and continuing through the present, Plaintiff has only subscribed to internet services through Defendants.

33.    When transferring his account Mr. Allison was connected with various CenturyLink call-centers where he was promised by salespeople rates and discounts which he later learned to be false and fraudulent.

34.    CenturyLink representatives requested Mr. Allison make payments through its automated payment feature, which was represented to be a requirement to get a discounted rate.

35.    Mr. Allison began noticing that funds were being taken out of his checking account which were not authorized and contracted for and which were different, and seemingly arbitrarily higher amounts, than what was promised and agreed to each month.  By way of example, any given month sums ranging between $30-60 would be taken from Mr. Allison's account.

36.    Mr. Allison spent approximately between 10-20 hours on the phone with CenturyLink call centers disputing these charges from 2011 to the present. Instead of assisting Mr. Allison in reversing these false and unauthorized chargers, the representatives working at Defendants' call centers would pitch Mr. Allison on new or additional services and discounts. Mr. Allison would be told by call center operators that the discounts he was promised either did not exist or had expired, despite representations by the sales operators which made the deal with Mr. Allison.

37.    Mr. Allison found himself caught in a web of misdirection, fraudulent statements, and pass-offs from one call operator to the next, continuing to offer rates and deals which were false, and which one operator would accuse and blame the other operator for the incorrect rate. Mr. Allison would request verified email responses from CenturyLink confirming the rates he was promised, but instead would receive an email that would only contain the work number.

38.    Utterly frustrated and disgusted by the deception being thrust upon him by CenturyLink, in mid-2016 Mr. Allison went to a CenturyLink retail store and demanded to speak with a manager.  After waiting an hour in the store, Mr. Allison spoke with someone purporting to be a manager from CenturyLink and she stated that Mr. Allison should not have relied on the representations of call center operators and they are trained that "if they are not selling you something to get you off the line."

39.    In addition, CenturyLink continued to bill Mr. Allison for a rental modem for 3 months ($10 a month) after he returned it and was given a receipt saying it was received in good condition.  Had Allison not caught this overcharge and complained about it, demanding the charges immediately stop, CenturyLink would have continued to overcharge him indefinitely. The manager Mr. Allison spoke with about all this was D. Esconbedo at the CenturyLink retail store at 44th Street and Thomas Road in Phoenix, Arizona 85018.

40.    Mr. Allison now reviews all of his CenturyLink bills meticulously given his experience being deceived by CenturyLink. Indeed, just this past March 2017, CenturyLink placed a $10 "internet security" fee on Mr. Allison's bill when he did not purchase such a service. CenturyLink refused to reverse the charge immediately, and required Mr. Allison to wait to the next billing cycle before crediting the fraudulent charge to the next month's bill. Mr. Allison reports CenturyLink employees treated him rudely and unprofessionally when he tried to reverse this simple charge that was not authorized or agreed to.

41.    CenturyLink has refused to reverse and reimburse Mr. Allison for all monies he has been required to pay above the quoted prices by the CenturyLink sales representatives.

42.    By reason of the foregoing, Mr. Allison has been charged at least $500 by CenturyLink in unauthorized charges.  Mr. Allison has been damaged and incurred financial loss as a result of the common practices complained of.

## CLASS ACTION ALLEGATIONS

43.    This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. Rule 23 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

44.    The Class is defined to include: "All persons in the state of Arizona who contracted with Defendants for telephone, television and/or internet service during the relevant Class Period" (referred to herein as the "Class").  The "Class Period" for the

Class dates back to the length of the longest applicable statute of limitations for any claims asserted on behalf of that Class from the date this action was commenced and continues through the present and the date of judgment. Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; the undersigned counsel for Plaintiff and their employees; and the judge and court staff to whom this case is assigned. Plaintiff reserves the right to amend the definition of the class if discovery or further investigation reveals that the class should be expanded or otherwise modified.

45.    This action satisfies the predominance, commonality typicality, numerosity, superiority, adequacy, and all other requirements of Fed. R. Civ. P. Rules 23(a), 23(b)(2), and 23(b)(3).

**(a) Numerosity**: The Plaintiff Class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff is informed and believes, and based thereon alleges, that thousands of consumers have been victimized by CenturyLink's practices in Arizona, in the manner described above.

**(b) Commonality**: Common questions of law and fact exist as to all members of the Plaintiff Class and predominate over any questions that affect only individual members of the Class. The common questions of law and fact include, but are not limited to:

(i) Whether Defendants maintained incentive programs which incentivized employees and agents to overcharge Class Members for services Class Members did not order and agree to;

(ii) Whether Defendants maintained a program of shifting responsibility to consumers to discover the overcharges they imposed, as opposed to billing and collecting service fees from consumers accurately and in good faith;

(iii) Whether Defendants made misrepresentation or omissions of material fact about their telecommunications services, billings and/or employee incentive programs;

(iv) Whether Defendants breached any implied or explicit contractual obligations to subscribers or deceptively billed for services not being offered, not contemplated, or not agreed upon;

(v) Whether Defendants breached the implied covenant of good faith and fair dealing made part of all contracts;

(vi) Whether Defendants should be required to conduct an equitable accounting and provide refunds; and

(vii) Whether Defendants have been unjustly enriched.

**(c) Typicality**: Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and the members of the class sustained damages arising out of CenturyLink's wrongful and fraudulent conduct as alleged herein.

**(d) Adequacy**: Plaintiff and the undersigned counsel will fairly and adequately protect the interests of the Class Members. Plaintiff has no interest that is adverse to the interests of the other Class Members and has hired counsel experienced in class actions and complex litigation.

**(e) Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of

14

individualized litigation would be substantial, and significantly more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

**(f) Public Policy Considerations**: When a company or individual engages in fraudulent and predatory conduct with large swaths of consumers, it is often difficult or impossible for the vast majority of those consumers to bring individual actions against the offending party. Many consumers are either unaware that redress is available, or unable to obtain counsel to obtain that redress for financial or other reasons. Class actions provide the class members who are not named in the complaint with a vehicle to achieve vindication of their rights. The members of the class are so numerous that the joinder of all members would be impractical and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the court. There is a well-defined community of interest in the questions of law or fact affecting the Plaintiff Class in that the legal questions of consumer fraud, breach of contract, and other causes of action, are common to the Class Members. The factual questions relating to CenturyLink's wrongful conduct and their ill-gotten gains are also common to the Class Members.

**(g) Risk of Continuing Harm**: The practices complained of are of an ongoing and continuing nature. Most Class Members remain unaware of the practices complained of.  The risk of continuing and future harm from the practices complained of continues to exist making injunctive, declaratory, and equitable relief appropriate and necessary.  Injunctive and declaratory relief barring Defendants' continuation of these practices and notice to the Class is appropriate and necessary.  Absent such relief, the amounts Defendants will improperly collect in the future will exceed that already collected.  Injunctive and declaratory relief is therefore, predominant.

# COUNT I

## ARIZONA CONSUMER FRAUD ACT
### Ariz. Rev. Stat. §§ 44-1522, *et seq.*
### *(By Plaintiff Individually and On Behalf of All*
### *Class Members Against All Defendants)*

46.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

47.     Plaintiff brings this action on behalf of himself and on behalf of the Class against Defendants for violations of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1522 *et seq.* ("ACFA").

48.     This claim is based on Defendants' deceptive and misleading conduct and common omissions of material fact.

49.     The ACFA broadly prohibits deceptive and misleading practices.

50.     Ariz. Rev. Stat. § 44-1522 states: "The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

51.     Plaintiff and each member of the Class is a "person" as defined in § 44-1521 of the ACFA.

52.     The internet, television and telephone services that Defendants sold to Plaintiff and the Class constitutes merchandise under the ACFA.

53.     Defendants engaged in unfair and deceptive acts and practices that violated ACFA.

54.     As alleged herein above, CenturyLink, through its employees and agents, has engaged in a pattern and practice of deceptive and misleading activity, and collection

16

of monies by way of false pretenses. Defendants engaged in deceptive, unconscionable, and/or unfair business practices by, among other things, causing the members of the Class to be signed up for services they did not request or authorize, billing at higher rates than those quoted, billing for early termination fees, continuing to bill customers after they had canceled their accounts, adding charges and requiring consumers to pay for previously undisclosed fees in connection with signing up for Defendants' services. The amounts charged, collected and auto-deducted from bank accounts (or otherwise billed and collected) are material terms to consumers. Deceptively overcharging consumers in a manner they are unlikely to detect within the short time from provided is a material misrepresentation or an omission of material fact to reasonable consumers in the Class. As explained in the *Heiser* complaint, the foregoing occurred and injured Class Members because Defendants maintained an incentive program for their employees and agents which provided financial incentives to them to engage in such conduct.

55.    Defendants acted with the intent that Plaintiff and members of the Class rely on their concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise and therefore engaged in unlawful practices in violation of the ACFA. The amounts billed to each consumer each month are relatively small (less than $200) and therefore, Defendants know that certain consumers will have little time to actively monitor and immediately seek corrections when appropriate. Defendants seek to exploit and take advantage of that.

56.    Plaintiff and the Class lost money, were injured and harmed by Defendants' deceptive, unconscionable, and/or unfair business practices in amounts to be determined at trial.

57.    The conduct described herein is continuing. The conduct was done for profit as a deliberate corporate policy rather than as an isolated incident, was morally wrong, callous, and/or oppressive.

58.    As a result of the foregoing Plaintiff and the Class are entitled to, among other things, compensatory damages, any statutory damages and penalties allowed by

17

law, an accounting, injunctive and declaratory relief, and all other relief deemed just and equitable by the Court, including but not limited to reasonable attorneys' fees and costs.

## COUNT II

### BREACH OF CONTRACT
### *(By Plaintiff Individually and On Behalf of*
### *All Class Members Against All Defendants)*

59.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

60.    Plaintiff and each member of the Class entered into contracts with Defendant for the provision of telephone, internet, television, and/or other services at certain costs. Plaintiffs performed under the contracts.

61.    As explained above, Defendants maintained an incentive program(s) for their employees and agents which provided financial incentives to them to charge customers for services consumers in the Class did not order and/or to overcharge those consumers for services they did order.

62.    Defendants overcharged Plaintiff and members of the Class in breach of their contracts.

63.    Plaintiff and Class Members were charged for services for which they did not agree to pay for, or for services they agreed but in amounts which they did not agree to pay.

64.    Plaintiff and the Class were injured, harmed, and incurred financial loss by way of Defendants' conduct in amounts to be determined at trial.

65.    As a result of the foregoing, Plaintiff and the Class are entitled to, among other things, compensatory damages, an accounting, and all other relief deemed just and equitable by the Court.

/ / /

/ /

18

## COUNT III

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
*(By Plaintiff Individually and On Behalf of*
*All Class Members Against All Defendants)*

66.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

67.    Implied in every contract is a duty of good faith and fair dealing.

68.    By its actions herein, Defendants breached that duty and did not act fairly or in good faith.

69.    Plaintiff and the Class were injured, harmed, and incurred financial loss by way of Defendants' conduct in amounts to be determined at trial.

70.    As a result of the foregoing, Plaintiff and the Class are entitled to, among other things, compensatory damages, an accounting, and all other relief deemed just and equitable by the Court.

## COUNT IV

### ACCOUNTING
*(By Plaintiff Individually and On Behalf of*
*All Class Members Against All Defendants)*

71.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

72.    As explained above, Defendants maintained an incentive program(s) for their employees and agents which provided financial incentives to them to charge customers for services they did not order and/or to overcharge consumers for services they did order.

73.    As a result, Defendants maintained a system of overcharging and collecting from Plaintiff and the other members of the Class monies which they did not agree to pay.

74.    As a result of the foregoing, Defendants have received money, a portion of which is due to Plaintiff and the Class.

75.    The amount of money due from Defendants to Plaintiff and the Class is currently unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the Class' transactions and accounts with Defendants. Plaintiff, on behalf of the Class, therefore demands an accounting of the aforementioned transactions from Defendants and payment of the amount found due but Defendants have failed and refused, and continues to fail and refuse, to pay such sum.    Such accounting should be conducted at Defendants' sole cost and expense.

76.    Defendants maintained sole custody and control of their accounts and billing systems. Defendants also had exclusive access to the internal incentive programs offered to their agents and employees.  Many Class Members agreed to have Defendants auto-deduct payments from their bank accounts, placing trust in Defendants to only bill them amounts that they agreed to pay and in good faith.  By way of the foregoing, Defendants have had a special relationship with Plaintiff and the Class and a duty to account accurately for the amounts charged and collected for services performed and provided.

77.    Defendants failed to bill and collect sums from Plaintiff and the Class consistent with their agreements. Plaintiff and the Class trusted and relied on Defendants to bill them accurately and only collect amounts properly due. Many Class Members unsuspectingly provided Defendants authorization for automatic payments and withdrawals. As shown above and in the attached exhibits, there is a widespread problem with overbilling and inaccurate collections by Defendants which requires review and oversight.

78.    An accounting and audit is necessary. A balance due from the Defendants to Plaintiff and the Class can only be ascertained through such an accounting.

79.    Given their superior knowledge and access to records, as well as duty to only bill and collect monies in good faith, Defendants are in the superior and exclusive position to confirm the accuracy of their accounts and collections from Class Members and provide refunds.

80.    Defendants should be ordered to provide an accounting of each Class Member's account (along with appropriate supervision), to ensure that they have not been overcharged. To the extent they have been overcharged (as with Plaintiff), Defendants should be ordered to immediately refund the difference with interest, along with all other relief found just and equitable in the premises, including but not limited to reasonable attorneys' fees and costs.

## COUNT V

### UNJUST ENRICHMENT
### *(By Plaintiff Individually and On Behalf of*
### *All Class Members Against All Defendants)*

81.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

82.    As a result of Defendants' unlawful and deceptive practices described above, Defendants have been unjustly enriched in retaining revenues derived from Plaintiff's and Class Members' payments for Defendants' services. Retention of that revenue under these circumstances is unjust and inequitable because Defendants used illegal, deceptive, and unfair business practices to induce or force customers to open, purchase, and/or maintain services and products.

83.    Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class for its unjust enrichment, along with all other relief found just and equitable in the premises, including reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class Members, prays for judgment as follows:

## CLASS CERTIFICATION

1.    For an order certifying the proposed Class pursuant to Fed. R. Civ. P. Rules 23(a), 23(b)(2), and/or 23(b)(3);

2.    That Plaintiff be appointed as the representative of the Class; and

3.    That the undersigned counsel for Plaintiff be appointed as Class Counsel.

## AS TO ALL CAUSES OF ACTION

1.    For an order finding in favor of Plaintiff and the Class Members on all counts asserted herein;

2.    For an order declaring that Defendants' conduct violates the statutes referenced herein;

3.    For all actual, consequential, statutory, and incidental losses and damages, according to proof;

4.    For appropriate injunctive relief, including an order prohibiting continuation of the practices complained of;

5.    For an accounting;

6.    For punitive damages, where permitted by law;

7.    For reasonable attorneys' fees and costs, where permitted by law;

8.    For prejudgment interest on all amounts awarded;

9.    For costs of suit herein incurred; and

10.    For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated:  July 6, 2017                          Respectfully submitted,

                                                        **ZIMMERMAN REED LLP**

                                    By:    *s/ Hart L. Robinovitch*
                                                        Hart L. Robinovitch (AZ SBN 020910)
                                                        14646 North Kierland Blvd., Suite 145
                                                        Scottsdale, Arizona  85254
                                                        Telephone: (480) 348-6400
                                                        Facsimile:  (480) 348-6415
                                                        Email: hart.robinovitch@zimmreed.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GERAGOS & GERAGOS, P.C.**
Mark J. Geragos
    (*pro hac vice* to be filed)
Ben J. Meiselas
    (*pro hac vice* to be filed)
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone: (213) 625-3900
Facsimile: (213) 625-1600
Email: Geragos@Geragos.com

*Attorneys for Plaintiff and the Class*